UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

A.M., by and through her parents and
natural guardians Duval Malcom and
Shawntel Gordon, DUVAL MALCOLM,
and SHAWNTEL GORDON,

    Plaintiffs,

v.   Case No.: 8:18-cv-2398-EAK-SPF

BAYFRONT HMA MEDICAL
CENTER, LLC, d/b/a BAYFRONT
MEDICAL CENTER n/k/a
BAYFRONT HEALTH ST.
PETERSBURG d/b/a BAYFRONT
BABY PLACE AT ALL CHILDREN'S
HOSPITAL, et al.,

    Defendants.

## ORDER

The plaintiffs, A.M. and her parents and natural guardians Duval Malcolm and Shawntel Gordon (collectively, the "**Plaintiffs**"), sue the defendants[1] for medical malpractice. (Doc. 26). Bayfront, Deluca, Gibson, Hurley, and Segler (collectively, the "**Bayfront Defendants**"), (Doc. 24), All Children, (Doc. 35), Sanchez, (Doc. 36), and the Board, (Doc. 47), move to abate certain of the Plaintiffs' claims and to dismiss

---

[1] Specifically, the Plaintiffs sue Bayfront HMA Medical Center, LLC, d/b/a Bayfront Medical Center n/k/a Bayfront Health St. Petersburg d/b/a Bayfront Baby Place At All Children's Hospital ("**Bayfront**"), Chelsea Deluca ("**Deluca**"), Jalessa Clark-Gibson ("**Gibson**"), Aimee Engelman-Hurley ("**Hurley**"), Jackie O'Toole-Segler ("**Segler**"), Johns Hopkins All Children's Hospital, Inc. d/b/a All Children's Hospital ("**All Children**"), the University of Florida Board of Trustees (the "**Board**"), Lajuan Sanchez ("**Sanchez**"), and the United States (collectively, the "**Defendants**"). (Doc. 26).

the others. The Plaintiffs oppose in part. (Docs. 33, 37, 63, 57). The Court will grant-in-part and deny-in-part the motions.

I. **Background**

On March 20, 2016, at approximately 8:00 p.m., Shawntel Gordon was admitted into Bayfront Baby Place, a perinatal intensive care center operated by Bayfront and located at All Children, after experiencing contractions and early signs of labor. (Doc. 26 at ¶1). Twenty-five hours later, her daughter, A.M., was born with a hypoxic-ischemic encephalopathic brain injury. Id. at ¶¶43, 46. The Plaintiffs allege A.M.'s injury was a direct result of the Defendants' labor and delivery mismanagement. Id. at ¶¶32–46.

The Plaintiffs sue five individuals – four registered nurses employed by Bayfront and a student nurse midwife enrolled in the University of Florida College of Nursing ("**UFCON**") midwifery program – and four separate entities – Bayfront, the owner and operator of Bayfront Baby Place, All Children, the hospital out of which Bayfront Baby Place operates, the Board, which governs UFCON, and the United States, which funds the healthcare center that employs Ms. Gordon's OB-GYN and her certified nurse midwife. Id. at ¶¶8–26. The Plaintiffs assert the following sixteen causes of action against the Defendants:

    Count I     Willful, reckless, and wanton disregard of human rights and safety (Sanchez)

    Count II    Negligence (Deluca)

Count III    Willful, reckless, and wanton disregard of human rights and safety (Deluca)

Count IV     Negligence (Gibson)

Count V      Willful, reckless, and wanton disregard of human rights and safety (Gibson)

Count VI     Negligence (Hurley)

Count VII    Willful, reckless, and wanton disregard of human rights and safety (Hurley)

Count VIII   Negligence (Segler)

Count IX     Willful, reckless, and wanton disregard of human rights and safety (Segler)

Count X      Vicarious liability based on negligence (Bayfront)

Count XI     Vicarious liability based on willful, reckless, and wanton disregard of human rights and safety (Bayfront)

Count XII    Negligence/breach of non-delegable duty (Bayfront)

Count XIII   Vicarious liability based on joint venture (All Children)

Count XIV    Vicarious liability based on negligence (the United States)

Count XV     Vicarious liability based on willful, reckless, and wanton disregard of human rights and safety (the United States)

Count XVI    Vicarious liability based on negligence (the Board)

The Court will first address the Plaintiffs' negligence claim against the Board (Count XVI). Next, the Court will address the Plaintiffs' negligence claims against the Bayfront Defendants, All Children, and the United States (Counts II, IV, VI, VIII, X,

3

XII, XIII, and XIV). Finally, the Court will address the Plaintiffs' remaining claims sounding in willful, reckless, and wanton disregard for human rights and safety against the Bayfront Defendants, Sanchez, and the United States (Counts I, III, V, VII, IX, XI, and XV).

## II. Discussion

### A. The Court Will Dismiss Count XVI Pursuant to the Eleventh Amendment.

The Board moves to dismiss the Plaintiffs' vicarious liability claim in Count XVI because, it argues, the claim is barred by the Eleventh Amendment to the United States Constitution. (Doc. 47 at 3–5).

"Absent a legitimate abrogation of immunity by Congress or a waiver of immunity by the state being sued, the Eleventh Amendment is an absolute bar to suit by any individual against a state or its agencies in federal court." Gamble v. Fla. Dep't of Health & Rehab. Servs., 779 F.2d 1509, 1511 (11th Cir. 1986). State university boards of trustees are considered state agencies for purposes of Eleventh Amendment immunity. See §§ 768.28(2), Fla. Stat. See also, e.g., Debose v. Univ. of S. Fla., 178 F. Supp. 3d 1258, 1266–67 (M.D. Fla. 2016) (Kovachevich, J.). As a result, the Eleventh Amendment immunizes the Board from suit in this Court unless Congress validly abrogated that immunity or Florida waived the immunity. Gamble, 779 F.2d

4

at 1511. Here, neither exception applies, and the Plaintiffs don't disagree. (Doc. 57 at 4–5). The Court will therefore dismiss Count XVI.[2]

### B. The Court Will Abate Counts II, IV, VI, VIII, X, XII, XIII, and XIV Pursuant to NICA.

The Bayfront Defendants move to abate the Plaintiffs' negligence claims in Counts II, IV, VI, VIII, X, and XII pursuant to Florida's Birth-Related Neurological Injury Compensation Act ("**NICA**"), § 766.303 et seq., Fla. Stat. (Doc. 24 at 2–7). All Children joins in that argument with respect to the Plaintiffs' vicarious liability claim in Count XIII. (Doc. 35 at 2–3).

As explained by the Florida Supreme Court and the Eleventh Circuit,

> [NICA] was established by the Florida Legislature in 1988 as a means to alleviate the high costs of medical malpractice insurance for physicians practicing obstetrics. The legislature found that obstetricians were among the most severely affected by the current malpractice problems and that the costs of birth-related neurological injury claims were extremely high. Consequently, the legislature created the NICA fund to provide compensation, on a no-fault basis, for birth-related neurological injuries.

Fla. Birth-Related Neurological Injury Comp. Ass'n v. Dep't of Admin. Hearings, 29 So. 3d 992, 995 (Fla. 2010) (citing § 766.301, Fla. Stat.).

> This no-fault compensation plan provides the <u>exclusive remedy</u> for injuries that are compensable under the plan, except where there is clear and convincing evidence of bad faith or malicious purpose or willful and

---

[2] Although they concede the applicability of Eleventh Amendment immunity to their vicarious liability claim against the Board, the Plaintiffs request the Court remand the claim (and each of their remaining state law claims) back to state court in lieu of dismissal. Because the Plaintiffs' request for remand is not properly before the Court, however, see Fed. R. Civ. P. 7(b)(1)(A) ("A request for a court order must be made by motion."); Local R. M.D. Fla. 3.01(a), the Court declines to consider it.

> wanton disregard of human rights, safety, or property, and suit is filed prior to and in lieu of payment of an award under the plan. To recover under the no-fault plan, the representatives of an injured infant must file a claim with the Florida Birth-Related Neurological Injury Compensation Association, which administers the plan. <u>An administrative law judge [("**ALJ**")] has the exclusive jurisdiction to determine whether a claim is compensable under the plan</u>. A claim is compensable under the plan only if the [ALJ] determines that the infant's injury is a birth-related neurological injury sustained during obstetric treatment by a participating physician or a certified nurse midwife under the supervision of a participating physician.

Maradiaga v. United States, 679 F.3d 1286, 1288–89 (11th Cir. 2012) (citing §§ 766.303(2), 766.304, 766.305, 766.309, 766.315, 766.31, Fla. Stat.) (internal quotations omitted) (emphasis added). "If the [ALJ] determines that a claim <u>is</u> compensable under the no-fault plan, then <u>no</u> civil action for the covered injury may be brought or continued in violation of [NICA's] exclusiveness of remedy provisions." Id. at 1289 (citing § 766.304, Fla. Stat.) (internal quotations omitted) (emphasis added). If, on the other hand, the ALJ "determines that a claim <u>is not</u> compensable under the no-fault plan, then representatives of the injured infant <u>may</u> pursu[e] any and all civil remedies available under common law and statutory law." Id. (citing § 766.304, Fla. Stat.) (internal quotations omitted) (emphasis added).

The determination of the compensability of a plaintiff's claim under NICA is a condition precedent to the filing of a civil lawsuit. Failure of a trial court to abate an action ripe for NICA determination by the ALJ as to the compensability of an injury under the no-fault plan is considered a "depart[ure] from the essential requirements of

the law." Univ. of Miami v. M.A., 793 So. 2d 999, 1000 (Fla. 3d DCA 2001) (per curiam) (citation omitted).

Pursuant to NICA's exclusiveness of remedy provisions, the Bayfront Defendants and All Children move to abate each of the Plaintiffs' claims sounding in negligence until such time as the ALJ has determined compensability under NICA. (Docs. 24 at 2–7, 35 at 2–3). For their part, the Plaintiffs agree that their "regular negligence Counts" against the Bayfront Defendants should be abated.[3] (Doc. 33 at 6). The Court will therefore abate Counts II, IV, VI, VIII, X, and XII.

However, the Plaintiffs oppose, in part, abatement of their vicarious liability claim against All Children in Count XIII. (Doc. 63 at 6–8). Specifically, the Plaintiffs contend that those portions of Count XIII sounding in willful, reckless, and wanton disregard of human rights and safety should proceed in this Court, since such claims are explicitly excepted by NICA. Id. But, upon review, Count XIII doesn't allege that All Children is vicariously liable for the willful, reckless, and wanton disregard of human rights and safety by Ms. Gordon's treating physicians and nurses. Rather, in Count XIII, the Plaintiffs affirmatively allege only that All Children "is vicariously liable for the acts of <u>negligence</u>" committed by those individuals. (Doc. 26 at ¶118) (emphasis added). If the Plaintiffs sought to hold All Children vicariously liable for

---

[3] Specifically, the Plaintiffs agree that "Counts II, IV, VI, VIII, and X, <u>only</u>," should be abated. (Doc. 33 at 3) (emphasis added). The Plaintiffs make no representation with respect to abatement of Count XII. However, upon review, Count XII asserts a negligence/breach of non-delegable duty claim against Bayfront. (Doc. 26 at ¶¶102–110). Such a claim, of course, sounds in negligence and is also due to be abated.

7

the alleged willful, reckless, and wanton disregard of human rights and safety by Ms. Gordon's treating physicians and nurses, they were required to specifically plead such a claim in their complaint. See Tamiami Trail Tours, Inc. v. Cotton, 463 So. 2d 1126, 1127 (Fla. 1985) (holding that the defendant could not be found liable under a theory of vicarious liability that was not specifically pleaded in the complaint). They didn't, however, and on its face Count XIII sounds solely in negligence. The Court will therefore abate Count XIII.

Additionally, although no party has so moved, the Court will likewise abate the Plaintiffs' negligence claim against the United States in Count XIV. See Maradiaga, 679 F.3d at 1292–93 (holding that the plaintiffs' civil lawsuit brought under the Federal Tort Claims Act against the United States, alleging that the negligence of certain medical professionals at a federally supported healthcare center caused their son's severe brain injuries, was barred by NICA's exclusiveness of remedy provisions).

### C. The Court Will Stay the Prosecution of Counts I, III, V, VII, IX, XI, and XV Pending the ALJ's NICA Compensability Determination.

The Bayfront Defendants move to dismiss the Plaintiffs' willful, reckless, and wanton disregard for human rights and safety claims in Counts III, V, VII, IX, and XI because, they argue, the Plaintiffs failed to plausibly allege that Ms. Gordon's treating physicians or nurses engaged in the type of conduct necessary to support those claims. (Doc. 24 at 11–16). Sanchez levies a similar argument with respect to the Plaintiffs' nearly identical claim against him in Count I. (Doc. 36 at 5–6). As an additional ground for dismissal of Count XI, which is predicated on a theory of vicarious liability,

Bayfront argues the Plaintiffs failed to plausibly allege that Ms. Gordon's treating physicians or nurses were employees, agents, or apparent agents of Bayfront. (Doc. 24 at 7–11).

At this juncture, the Court will decline to consider the merits of the Bayfront Defendants' and Sanchez's arguments for dismissal of the Plaintiffs' willful, reckless, and wanton disregard for human rights and safety claims against them. Instead, the Court will stay the prosecution of those claims – as well as the Plaintiffs' nearly identical claim against the United States in Count XV – pending the ALJ's NICA compensability determination.

A district court has the inherent, discretionary authority to stay litigation before it pending the outcome of a related proceeding in another forum, so long as the duration of the stay is reasonable and the need for the stay is justifiable. See CTI-Container Leasing Corp. v. Uiterwyk Corp., 685 F.2d 1284, 1288 (11th Cir. 1982) ("The inherent discretionary authority of the district court to stay litigation pending the outcome of [a] related proceeding in another forum is not questioned. . . . The district court has a general discretionary power to stay proceedings before it in the control of its docket and in the interests of justice.") (citations omitted). Here, the Court finds that a stay pending the outcome of the NICA proceedings is in the best interests of the just adjudication of the dispute on its merits and of the time and resources of the Court, the lawyers, and the litigants. The NICA proceedings may materially affect the proceedings in this Court, and a stay will operate to avoid the

piecemeal and potentially inconsistent litigation of the dispute in two separate forums and in front of two different referees. Moreover, the stay will have a finite duration. That is, the stay will last only as long as the NICA proceedings, which typically conclude within a matter of months. See § 766.307(1), Fla. Stat., (requiring that the ALJ set a hearing on the claim between 60 and 120 days after the filing of the petition). Once the NICA proceedings have concluded and the parties have informed the Court as to the outcome, the Court will lift the stay and permit the Bayfront Defendants and Sanchez to renew those portions of their motions seeking dismissal of the Plaintiffs' claims in Counts I, III, V, VII, IX, and XI and otherwise reinstitute the prosecution of this action.

## III. Conclusion

Accordingly, it is **ORDERED** that the pending motions to dismiss, (Docs. 24, 35, 36, 47), are **GRANTED-IN-PART** and **DENIED-IN-PART** as follows:

1. Count XVI of the Plaintiffs' complaint is **DISMISSED**.
2. Counts II, IV, VI, VIII, X, XII, XIII, and XIV of the Plaintiffs' complaint are **ABATED** for compensability determination by the ALJ pursuant to NICA.
3. The prosecution of Counts I, III, V, VII, IX, XI, and XV of the Plaintiffs' complaint is **STAYED** pending the ALJ's NICA compensability determination, and those portions of the Bayfront Defendants' and

Sanchez's motions to dismiss seeking dismissal of Counts I, III, V, VII, IX, and XI are **DENIED WITHOUT PREJUDICE**.

4. The parties shall jointly file on the Court's docket a status report regarding the status of the NICA proceedings every 60 days, beginning on the 60th day after the entry of this Order, or upon completion of the NICA proceedings, whichever occurs sooner. If the NICA proceedings haven't concluded before the 180th day after this Order issues, the Court will entertain motion practice to lift the stay and reinstitute the prosecution of Counts I, III, V, VII, IX, XI, and XV.

5. The parties' deadline to file a Case Management Report is **STAYED** pending further Order of the Court.

**ORDERED** in Chambers, in Tampa, Florida, this 28th day of August, 2019.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel/Parties of Record